**UNITED STATES of America, Plaintiff,**

**v.**

**Michael LIPOWSKI et al., Defendants.**

**Crim. No. 74–531.**

United States District Court,
D. New Jersey.

Dec. 14, 1976.

---

James M. Deichert, U. S. Dept. of Justice, Newark Strike Force, Newark, N. J., for plaintiff.

Samuel De Luca, Jersey City, N. J., for defendant Lipowski.

James A. Galdieri, Jersey City, N. J., for defendant Mancuso.

Dennis D. S. McAlevy, Jersey City, N. J., for defendant Cohen.

OPINION

WHIPPLE, Chief Judge.

By way of the instant motion, defendants herein are applying to this Court for an order setting aside the judgment of conviction and seeking a new trial or a dismissal of the indictment based upon new evidence and perjury committed by the main government witness, Vincent J. Rapisardi, Jr.

During a bail restoration hearing approximately one year prior to trial, the government called as a witness Vincent J. Rapisardi, Jr., the alleged victim of the crimes enumerated in the instant indictment. Rapisardi testified regarding phone calls he had received and recorded on FBI-supplied equipment. The conversation of interest in the instant proceedings was received and recorded by Rapisardi approximately two weeks prior to the February 20, 1975 bail restoration hearing. According to Rapisardi's testimony regarding that phone call, an unknown person stated that "Lenny", implying one of the defendants, Leonard Cohen, would burn his, Rapisardi's, place down if the tenant in the back did not pay up money that was owed. On February 22, 1975, two days after he had testified, Rapisardi's sub shop was burned down.

During the trial, which commenced in February, 1976, Rapisardi did not testify regarding the anonymous call nor was the tape recording of that call played to the jury. Defense counsel submit that they declined to ask Rapisardi any questions about the fire or the anonymous call "because of the damaging and prejudicial result of Rapisardi's answer as to the threat of Lenny" (page 2 of Defendants' Memorandum of Law in Support of Their Motion) which Rapisardi made during the bail restoration hearing.

After the trial, at which defendants were convicted, defense counsel discovered that Rapisardi had been indicted for the arson of his sub shop by the Somerset County Grand Jury based upon a sworn statement, dated January 8, 1976, by a Steven Murphy. Upon learning of the indictment and the contents of Murphy's sworn statement, the defendants brought the instant motion, pursuant to which a hearing was held in this Court on October 12, 1976. Murphy testified that he made the anonymous call at Rapisardi's direction and read a pre-arranged script concerning the threatened arson. Murphy further testified that it was he who set fire to the sub shop with direction, aid and financial remuneration supplied by Rapisardi.

Defendants' counsel now claim that this new evidence clearly indicates that Rapisardi committed perjury at the bail restoration hearing and that, had they known this at the time of trial, they could have introduced it as circumstantial evidence in order to impeach Rapisardi's credibility and to show that he may have tampered with other tapes introduced as evidence by the prosecution or falsified the surrounding circumstances thereof, as was done with the "Murphy-arson" tape.

■ Having thoroughly considered all the factual allegations and legal issues concerning the case *sub judice*, it is the opinion of this Court that the defendants' claim has sufficient merit to warrant the granting of a new trial. To withhold the newly discovered evidence regarding Rapisardi's alleged perjury would be a mockery of justice and a denial of the fundamental fairness which is the foundation of our judicial system. While evidence discovered after trial may not always satisfy the criteria necessary for the granting of a new trial, the nature of the newly discovered evidence herein, as it relates to the credibility of the government's main witness, Rapisardi, and the authenticity of the tapes put into evidence by the government, dictates that this evidence should be properly put before the jury in a new trial.

As previously noted, defendants base their claim for a new trial on newly discovered evidence and alleged perjury by Rapisardi. The latter basis can be dismissed without merit because the alleged perjury was committed at the bail restoration hearing, not at trial before the jury. The fact that the jury never heard the alleged false testimony by Rapisardi precludes the defendants from now relying on the alleged perjury as a means of obtaining their requested relief. However, the newly discovered evidence regarding the substantive aspects of Rapisardi's alleged perjured testimony can and does support defendants' motion for a new trial.

In order for a new trial to be granted on the basis of newly discovered evidence, the following criteria must be completely satisfied:

   (1) The evidence must have been discovered after the trial;

   (2) The failure to learn of the evidence must not have been caused by defendants' lack of diligence;

   (3) The new evidence must not be merely cumulative or impeaching;

   (4) It must be material to the principal issues involved; and

   (5) It must be of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Meyers*, 484 F.2d 113 (3d Cir. 1973); *United States v. Bertone*, 249 F.2d 156 (3d Cir. 1957).

The critical questions before this Court are not concerned with the first two criteria enumerated above, since the Court is convinced that the defendants were not delinquent in discovering the new evidence until after the trial was completed. The ensuing discussion, therefore, will focus on this Court's interpretation of the pertinent law and the instant facts as they relate to the latter three criteria.

It is generally within the sound discretion of the trial court to grant or deny a new trial on the ground of alleged newly discovered evidence which is merely cumulative or impeaching. *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976); *United States v. Cozzetti*, 469 F.2d 684 (9th Cir. 1972). Ordinarily, newly discovered evidence affecting a witness' credibility at trial "will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Mesarosh v. United States*, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, 5 (1956). However, it is within the Court's power to grant a new trial if it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different verdict. *United States v. Davila*, 428 F.2d 465 (9th Cir. 1970); *United States v. Lewis*, 338 F.2d 137 (6th Cir. 1964); *cert. denied*, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272, *Winer v. United States*, 228 F.2d 944 (6th Cir. 1956), *cert. denied*, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442.

The newly discovered evidence herein is certainly not of a cumulative nature, but it is definitely impeaching. However, under the circumstances of this case, it is impeaching evidence with serious implications regarding the truth and veracity of Rapisardi's testimony, a factor which had to weigh heavily on the minds of the jurors during their deliberation. This Court feels very strongly that the additional piece of impeaching evidence could have been the proverbial "straw that broke the camel's back" with respect to Rapisardi's credibility, which would have almost assuredly resulted in a different verdict by the jury. Thus, it is my firm belief that under the facts of the instant case, the ordinary rule, as espoused in *Mesarosh v. United States, supra*, for not granting a new trial is inapplicable, and that "the evidence here does not come within the general interdiction that the newly discovered evidence which is merely impeaching is ordinarily insufficient to warrant a new trial." *United States v. Gordon*, 246 F.Supp. 522 (D.D.C.1965).

Defendants' second ground for seeking a new trial, i.e., the newly discovered

evidence casts serious doubt over the authenticity of the tapes introduced into evidence by the government, is as meritorious as the first. Before a sound recording is admitted into evidence, a foundation must be established for its authenticity. Rule 901(b)(5) and (6) Federal Rules of Evidence. The authorities clearly indicate that a foundation must be established by showing the following facts:

(1) That the recording device was capable of taking the conversation now offered in evidence,

(2) That the operator of the device was competent to operate the device,

(3) That the recording is authentic and correct,

(4) That changes, additions or deletions have not been made in the recording,

(5) That the recording has been preserved in a manner that is shown to the court,

(6) That the speakers are identified,

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*United States v. McKeever,* 169 F.Supp. 426 (S.D.N.Y.1958). Rapisardi's alleged fraudulent tampering with the "Murphy-arson" tape raises serious questions concerning at least factors (3), (4), (5) and (7) enumerated above.

■ The discussion of authentication of tapes by Mr. Justice Anderson, sitting as a Circuit Justice in the Second Circuit, in *United States v. Knohl,* 379 F.2d 427, 440–441 (2nd Cir. 1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465, is particularly pertinent:

We are not unmindful, however, that tape recordings are susceptible to alteration and that they often have a persuasive, sometimes a dramatic, impact on a jury. It is therefore incumbent on the Government to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings; and where the court accepts them as authentic and accurate but the evidence is conflicting on these points, it must caution the jury to scrutinize the evidence with care.

. . . The question of whether so much of a tape recording is inaudible or the circumstances surrounding it are so suspicious and make it so untrustworthy that it should not be admitted into evidence in the first place is addressed to the discretion of the trial judge. [citation omitted]. In the present case the trial judge, after hearing the parties on the defendant's objection, admitted the tape into evidence. . . . Thereafter the jury, after hearing testimony and arguments relative to the reliability and accuracy of the tape and under proper instructions from the court, reached its own conclusion on that issue. The jury obviously believed the explanation given by the Government's witnesses, which it had a right to do.

Under the reasoning in *Knohl, supra,* and in accordance with the particular circumstances of the instant case, I believe that the jury should have the benefit of the newly discovered evidence as another weighing factor in its ultimate determination of the authenticity of the evidential tapes. Thus, even if this Court should subsequently allow the admission of the tapes into evidence at a new trial, the relative weight to be given their credibility still rests with the jury and to withhold from them what may be crucial circumstantial evidence would be a serious miscarriage of justice.

■ Having determined that the newly discovered evidence regarding the "Murphy-arson" tape and the alleged arson afford a sufficient basis for the granting of a new trial, a few words must be directed at the means by which this evidence may be admitted by the defendants. Evidence of character and conduct of witnesses is governed by Rule 608 of the Federal Rules of Evidence which provides in pertinent part:

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, . . ., may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthful-

ness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . .

Thus, if the defendants are seeking to introduce the newly discovered evidence solely for the purpose of impeaching Rapisardi's credibility, then they would be limited to asking Rapisardi questions on cross-examination regarding the tape and the arson and could not introduce any other evidence of any kind or from any other witness regarding this area. However, if the additional purpose of this evidence is to cast aspersions on the authenticity of the other tapes introduced into evidence by the government, then all the evidence regardless of its nature may be introduced since telephone calls and tape recordings made thereof may be authenticated by circumstantial evidence. *United States v. Alper,* 449 F.2d 1223, 1229 (3d Cir. 1971), *cert. denied,* 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 822; *United States v. Frank,* 290 F.2d 195 (3d Cir. 1961).

Based on the foregoing, it is the opinion of this Court that defendants' motion for a new trial shall be granted on the basis of the newly discovered evidence and such evidence shall be admissible in the subsequent trial for the purposes of impeaching the credibility of the government's main witness, Vincent J. Rapisardi, and to test the authenticity of the other tapes comprising a portion of the government's evidence.

An appropriate order in conformity with this opinion shall be submitted by the defendants forthwith.

**CHEMICAL BANK, Plaintiff,**

v.

**H. B. LAYNE, Defendant.**

**No. 73 Civ. 283–CSH.**

United States District Court,
S. D. New York.

Dec. 14, 1976.

Zalkin, Rodin & Goodman, New York City (Harold N. Schwinger, New York City, of counsel), for plaintiff.

Raymond F. Gregory, New York City, for defendant.

## MEMORANDUM

HAIGHT, District Judge:

In this action, before this court on the basis of diversity of citizenship,[1] plaintiff Chemical Bank ("Chemical") sues to enforce a guaranty executed on July 10, 1970 by defendant H. B. Layne ("Layne") in respect of the liabilities of one Eugene J. Cohen ("Cohen") to Chemical arising out of a demand promissory noted dated July 1, 1966.

The case was tried to the court without a jury on September 2 and 3, 1976. Extensive and able post-trial memoranda have been filed by counsel.

Chemical's theory of liability is straight-forward. Layne executed a guaranty of Chemical's demand loan to Cohen; Cohen's indebtedness under that loan amounted to $101,919.34 with interest of $10,768.75 to May 12, 1972 and interest thereafter plus reasonable attorneys' fees of $15,000 as provided for in Cohen's note; Layne is liable for these amounts as guarantor. At the trial Chemical's *prima facie* case required two minutes flat and consumed three pages of the 385-page transcript. Plaintiff offered in evidence, without objection, the note executed by Cohen on July 1, 1966 in favor of Chemical; Layne's guaranty of July 10, 1970; and a statement of agreed facts reflecting, *inter alia,* the amounts for which Chemical sued. Chemical thereupon rested, subject only to further proof on the reasonable amount of the attorneys' fees, that question being deferred until decision on Layne's liability under the guaranty.

Layne's denial of liability presented, in the pleading stages, a bristling arsenal of alternative defenses. His second amended answer reinforced a general denial by six affirmative defenses, and added three counterclaims. Layne prays for rescission of the two guaranties he executed;[2] punitive and exemplary damages in an amount of $250,000; and reasonable attorneys' fees in an amount to be determined.

Layne pleaded several defenses based upon fraudulent concealment by Chemical, and also alleged violation by Chemical of the Securities Act of 1933 and S.E.C. regulations. It is unnecessary to discuss all the defensive theories in detail. It is apparent from the post-trial briefs that Layne bases his defense upon Chemical's failure to disclose certain facts to Layne prior to the time Layne executed the guaranties.

Specifically, Layne charges that prior to his execution of the first guaranty on April 28, 1970, Chemical failed to disclose to Layne:

(1) that there were restrictions on the transfer of shares of Brilund Mines Company which Chemical was holding as collateral on the Cohen loan;

(2) that Cohen had guaranteed other loans made by Chemical to other individuals or companies; and

(3) that the bank officer in charge of the Cohen account had determined to release other individual guarantors of the Cohen loan.

Layne charges further that, prior to execution of his second guaranty on July 10, 1970, Chemical again failed to disclose the restrictions on the Brilund shares; the existence of Cohen's other guarantees; the actual release of other guarantors of the Cohen loan (the bank's intentions of April having been implemented by July); and the release, in May, of other collateral securing the Cohen loan.

In essence, Chemical does not dispute the facts of these non-disclosures. It contends

1. The suit was instituted in New York Supreme Court, New York County, and removed to this court by defendant, a Florida resident.

## I.

"Absent a clear showing that the bank was guilty of fraudulent concealment or misrepresentation or circumstances inconsistent with a bona fide transaction, the surety undertaking may not be avoided. *Bostwick v. Van Voorhis*, 91 N.Y. 353; *Howe Machine Co. v. Farrington*, 82 N.Y. 121; *Security Nat. Bank of Long Is. v. Compania Anonima De Seguros*, 21 Misc.2d 158, 190 N.Y.S.2d 820, affd. 10 A.D.2d 872, 199 N.Y.S.2d 532. The bank's duty was to disclose only those facts within its knowledge which were of such vital importance to the risk as to make it obvious that non-disclosure would, in effect, amount to a contrary representation to the surety. The defense of fraud fails unless there was concealment of material facts which were so important that if the surety had known them they would not have undertaken the risk. (*Howe Machine Co. v. Farrington*, supra.)." 337 N.Y.S.2d at 699.