UNITED STATES of America, Appellee,

v.

Robert B. SUTTON,
Defendant-Appellant.

No. 84–2046.

United States Court of Appeals,
Tenth Circuit.

July 15, 1985.

Mitchell B. Lansden, Baton Rouge, La., for defendant-appellant.

Gloria C. Phares, Atty., U.S. Dept. of Justice, Washington, D.C. (William J. Hardy, Atty., Dept. of Justice, Washington, D.C., and Layn R. Phillips, U.S. Atty., Tulsa, Okl., with her on brief), for appellee.

Before BARRETT, MOORE and TIM-BERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Robert B. Sutton appeals from orders entered July 11, 1984 in the Northern District of Oklahoma, James D. Ellison, *District Judge,* denying motions for a new trial and for an evidentiary hearing following his convictions after a jury trial of obstructing justice in violation of 18 U.S.C. § 1505 (1982) and of conspiracy to obstruct justice in violation of 18 U.S.C. § 371 (1982). Sutton's convictions were affirmed by this Court. *United States v. Sutton,* 732 F.2d 1483 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 903 (1985). He presently is serving his sentences of two concurrent three-year terms of imprisonment. We affirm the district court's orders referred to above.

### I.

The facts underlying Sutton's convictions are set forth in detail in our previous opinion affirming those convictions. 732 F.2d 1483. We shall briefly summarize only those facts believed essential to an understanding of our disposition of the issues raised on this appeal.

The government contended that Sutton obstructed justice by ordering Gaylord Simon, an employee of BPM, Ltd.—a corporation wholly-owned by Sutton—to destroy certain records sought by the Department of Energy (DOE) as part of an audit to determine whether Sutton had complied with DOE crude oil price and certification regulations. In support of the obstruction of justice charge, the government claimed that all but one of a number of boxes containing BPM purchase and sale invoices, which had been in the possession of Sutton's accountant, had been removed by a BPM employee to an ice house in Crowley, Louisiana. These boxes subsequently were destroyed by vandals. When Sutton discovered that one box had been left behind at the accountant's office he became upset. Simon testified that another BPM employee

instructed him to retrieve that box. Simon did so. Once the box was in his possession, Simon went to a restaurant and called Sutton. Sutton told Simon to destroy the box and stated that he never wanted to mention it again. Simon, however, disobeyed this directive and instead delivered the box to Jack Clothier, a former business associate of Sutton. Simon's testimony was corroborated by telephone company records which showed that a phone call was made on the night in question from the restaurant to the office of one of Sutton's lawyers; by the testimony of Sutton's lawyer that Sutton was in his office at the time of Simon's phone call; and by the testimony of Simon's wife that she drove her husband to the restaurant where he made the phone call and that Simon subsequently told her that Sutton had ordered him to destroy the box of records.

The government contended that Sutton conspired to obstruct justice by planning with Carlos Marcello to prevent Clothier and Clothier's attorney, William Lambert—who had obtained possession of the box of records—from talking with the FBI. To prove the conspiracy count, the government introduced taped conversations between Sutton and Marcello in which Sutton stated that he wanted to take steps to "waylay" Clothier and Lambert. The government also introduced evidence of unrecorded meetings between Sutton and Marcello.

Sutton claimed that Clothier, Lambert, Simon and Jean Brown—a former employee of Sutton who had gone into business for herself—had stolen the records and were using them to blackmail him. Sutton claimed that he had not told Simon to destroy the box of records and that his actions regarding Clothier and Lambert were motivated by an intent to rid himself of blackmailers rather than by an intent to obstruct justice.

Sutton's trial began April 20, 1982 before Judge Ellison and a jury. Sutton presented no defense, but urged his blackmail

---

* Of the Second Circuit, by designation.

theory upon the jury during closing arguments. Following two days of deliberation by the jury, a verdict of guilty was returned as to the conspiracy charge. The jury was unable to reach a verdict on the obstruction charge. At a second trial a few weeks later, Sutton was convicted of the obstruction charge.

Prior to Sutton's first trial, Clothier and Lambert met with government prosecutors and stated that each, on two separate occasions, had lied to the grand jury investigating this case. The FBI's 302 (transcript of interview) of Clothier indicated that he falsely told the grand jury that he had delivered to Lambert in February 1980 the box of records brought to him by Simon; in fact, he had delivered the box to Lambert in January 1980. The FBI's 302 of Lambert indicated that he and Clothier had agreed falsely to tell the grand jury that the box of records was in Simon's possession in order that they might retain the records for use in a possible civil suit against BPM, Ltd. and Sutton. Shortly after he testified before the grand jury, however, Lambert changed his mind. He called the FBI and stated that he was in possession of the records.

Since neither Clothier or Lambert was called as a witness at Sutton's first trial, the government did not turn over to Sutton or his attorney—pursuant to the Jenck's Act, 18 U.S.C. § 3500 (1982)—Clothier's and Lambert's statements. Clothier was called as a witness at the second trial. Sutton admits that the government provided him with Clothier's 302 at that time.

On February 8, 1984, before we had affirmed his convictions, Sutton filed with the district court a motion for a new trial based on newly discovered evidence pursuant to Fed.R.Crim.P. 33. On July 9, 1984, Sutton filed a motion requesting an evidentiary hearing and oral argument on the new trial motion. On July 11, 1984, after the district court received our mandate on the direct appeal, the court without discussion denied both motions.

## II.

The requirements for granting a motion for a new trial in a criminal case based on newly discovered evidence are well established. The alleged newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered and produced at the original trial. *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.), *cert. denied,* 434 U.S. 836 (1977). The motion is not regarded with favor and should be granted only with great caution, being addressed to the sound discretion of the trial court. *Id.* The decision of the trial court will not be disturbed unless there has been an abuse of such discretion.

In the instant case, Sutton's "newly discovered evidence" consisted of the FBI's 302 of Lambert which was produced during the government's criminal prosecution of Lambert, *United States v. Lambert,* No. Cr–83–220–W (W.D.Okla.1983), *aff'd,* No. 84–1693 (10th Cir.1984), and the deposition of Jean Brown taken in connection with the government's civil action against Sutton in which the DOE was awarded restitution of $400 million representing money wrongfully obtained by Sutton as a result of his miscertification of crude oil. *United States v. Sutton,* No. 82–C–1069–B (N.D. Okla.1984). Brown testified at Sutton's first trial that she had been approached by Clothier and had been requested to join in a scheme to blackmail Sutton, using the box of records. Her deposition in the civil action merely amplified her testimony at the Sutton criminal trial, although she did disclose that Simon also was aware of the blackmail threats. Sutton contends that this disclosure and the Lambert 302 would support his blackmail theory and that the district court, therefore, erred in denying his motion for a new trial. We disagree.

At Sutton's first trial he was convicted of participating in a conspiracy to obstruct justice. Sutton claimed that he

did not intend to obstruct justice but rather that he intended to rid himself of blackmailers. In support of the blackmail theory, one of the government prosecutors who had assisted the grand jury testified that he had seen letters written by Clothier and Lambert to Sutton containing blackmail threats. These letters were read to the trial jury which was free to consider them, as well as Brown's testimony concerning Clothier's attempt to lure her into a scheme to blackmail Sutton. The information contained in the Brown deposition would be only cumulative to her testimony at Sutton's criminal trial, probably would not produce an acquittal, and, therefore, did not provide a basis for granting a new trial. *United States v. Lee*, 700 F.2d 424, 427 (10th Cir.), *cert. denied*, 462 U.S. 1122 (1983). The Lambert 302 states only that Clothier and Lambert had decided to retain the box of records for use in a civil action against BPM, Ltd. and Sutton. To the extent that it provided any additional support for the blackmail theory, it also was merely cumulative to the evidence already presented on that point. Furthermore, Sutton's blackmail theory, even if true, would not necessarily contradict the government's well-supported position that Sutton *also* was intending to prevent Clothier and Lambert from talking to the FBI and thus conspiring to obstruct justice.

At Sutton's second trial, he was convicted of the substantive charge of obstruction of justice. The evidence adduced by the government indicated that Sutton had ordered Simon to destroy the incriminating box of records. The Brown deposition and the Lambert 302, assuming arguendo that they might support Sutton's blackmail theory, were immaterial as to whether Sutton actually ordered Simon to destroy the records. While the Lambert 302 might have been useful in impeaching Clothier at the second trial, this is also insufficient to provide the basis for a new trial. *Allen, supra*, 554 F.2d at 403.

■ Finally, we reject Sutton's suggestion that the government was guilty of prosecutorial misconduct for not delivering to Sutton the Lambert 302 prior to trial pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* requires only that the prosecution disclose evidence which is material to either guilt or punishment. *Id.* We have reviewed carefully the text of the Lambert 302 and are convinced that the government was under no obligation to disclose the document. We find that the Lambert 302 was not material inasmuch as nothing contained therein, in any way, would have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 104 (1976).

Since Sutton's alleged newly discovered evidence was not material to the issues involved or was cumulative to evidence already presented, we hold that the court did not abuse its discretion in denying the motion for a new trial.

### III.

■ We also hold that the court did not abuse its discretion in denying Sutton's motion for an evidentiary hearing on the new trial motion. The court was not required to hold such a hearing prior to making its decision. *United States v. Brewer*, 630 F.2d 795, 803 (10th Cir.1980).

In an effort to bolster his motion for a hearing, Sutton has renewed his suggestion that the Brown deposition and the Lambert 302 provide more support for his blackmail theory than the text of either would indicate on their face. We reject this contention. See Part II, *supra*, of this opinion. Sutton also has speculated that the government was guilty of bad faith since, according to Sutton, it was aware that Brown and Lambert had information which would have been helpful to his case and yet wilfully failed to disclose such information to Sutton. He argues that this claim could be substantiated at an evidentiary hearing to provide further support for a new trial. Such speculation, however, is an insufficient basis for requiring an evidentiary hearing. *United States v. Gilbert*, 668 F.2d 94, 96–97 (2d Cir.1981), *cert. denied*, 456 U.S. 946 (1982).

Considering all of the alleged newly discovered evidence in the light most favorable to Sutton, we hold that the court correctly denied his motion for an evidentiary hearing.

Affirmed.