**UNITED STATES of America, Plaintiff,**

v.

**Gene O. HARPSTER, M.D., Defendant.**

**No. 90–20048–01.**

United States District Court,
D. Kansas.

March 11, 1991.

Michael E. Francis, Topeka, Kan., for defendant.

Robert S. Streepy, Asst. U.S. Atty., Topeka, Kan., for plaintiff.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant's motion for new trial, based upon newly discovered evidence, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. A hearing was held on the matter on February 22, 1991. For the reasons set forth below, the court will deny defendant's motion.

Defendant, a local physician, was indicted on fourteen counts of mail fraud by a federal grand jury on June 20, 1990. In counts 1 through 8 of the indictment, defendant was charged with devising a scheme to defraud Employes' Benefit Association ("EBA"), a hospital association which provides health care benefits to Santa Fe Railroad ("Santa Fe") employees. Specifically, the counts alleged that defendant had directed his office personnel to complete and mail to EBA claim forms containing charges for services not actually rendered to patients. In counts 9 through 14 of the indictment, defendant was charged with devising a scheme to defraud EBA by mailing claim forms containing incorrect CPT codes for patient blood tests.

A jury trial was held on August 20–24, 1990. At the close of all of the evidence, the court granted defendant's motion for judgment of acquittal with respect to Counts 9 through 14 of the indictment. Defendant was subsequently found guilty by the jury on Counts 1 through 8 of the indictment.

At trial, the government's evidence established that, between 1986 and 1988, the defendant regularly treated approximately seventy-five Santa Fe employees and billed EBA for the services rendered. In early 1988, EBA's claims staff and director became concerned about the defendant's billing practices. Specifically, the director Sue Morris indicated that the defendant seemed to be treating Santa Fe patients on a "very frequent" basis. Record at 27. Further, Morris indicated that defendant's fees per visit appeared to be "excessive." *Id.* Based upon these concerns, Morris consulted with EBA's medical director and stopped payment to the defendant. After investigation, it was discovered that defendant's office had sent claim forms to EBA for Santa Fe employees who had been scheduled to see the defendant but had not shown up for their appointments. Rather than indicating that the patients had not shown up, the claim forms indicated that the defendant had seen and treated each patient.

Although defendant denied directing his office staff to prepare and send EBA

fraudulent claim forms,[1] two former employees of the defendant, Richard Hamm and Kathleen Kirkham, testified to the contrary.[2] Hamm, who had been responsible for insurance billing and other office duties, testified that the defendant had expressly directed him to bill EBA for patients that did not show up for scheduled appointments.[3] Kirkham, who was an office manager for defendant, testified that she was aware that the defendant was directing his office personnel to bill EBA for patients who missed appointments.[4]

After the trial and sentencing, and after having filed an appeal with the Tenth Circuit, defendant and his counsel discovered new evidence indicating that both Hamm and Kirkham may have embezzled insurance proceeds from defendant's practice.[5] Specifically, defendant discovered evidence that Hamm had allegedly endorsed and cashed, without defendant's knowledge or approval, approximately six checks from EBA totalling in excess of $6,000.00. With respect to Kirkham, defendant discovered that she had allegedly embezzled the proceeds of checks from another insurer. Additionally, defendant discovered that Hamm had previous convictions for theft and burglary.

Based upon this newly discovered evidence, defendant now urges the court to certify to the Tenth Circuit that it would grant his motion for new trial on remand. In response, the government argues that the evidence is cumulative or impeaching and does not entitle defendant to a new trial.

■ A district court may grant a motion for new trial "if required in the interest of justice." Fed.R.Crim.P. 33. In order to

---

1. During his direct examination, the defendant testified, in pertinent part:

 Q. Doctor, there was an indication on the record that apparently patients were billed when the did not show up for their appointments. You recall that generally?
 A. Yes, I certainly do.
 Q. Did you ever instruct anyone in your office to bill for patients who did not appear for appointments?
 A. I have never instructed that kind of activity.

 Record at 422–23.

2. Additionally, the defendant's veracity was seriously attacked by the government on cross-examination. Record at 428–39.

3. In Hamm's direct examination, the following discussion ensued:

 Q. Now, did you have discussions with the defendant regarding billing EBA for patients who did not show for appointments?
 A. Yes.
 Q. Could you tell the jury about those discussions, please?
 A. It was general practice to bill on a no show because the time had been allotted or set aside for that patient.

 * * * * * *

 Q. Did you tell Dr. Harpster you were concerned about billing EBA for no shows?
 A. Yes.
 Q. And what was his response when you told him you were concerned?
 A. I don't recall an exact response, but basically it was that it was felt that the charges were going to be paid 100 percent anyway, and they had already taken aside his time for—he had planned on them being there and they had kind of messed up the daily flow of activity.

 Record at 252.

4. In her direct examination, Kirkham testified, in pertinent part:

 Q. Now, did you become aware that Dr. Harpster was billing EBA for patients who failed to keep appointments at the north office?
 A. Yes, I did.
 Q. And how did you become aware of that?
 A. At the end of the day when he would say, "Give me your tickets," one time I had a ticket for a person that did not show, and I said "Oh, you don't want this one." And I turned away, said, "Oh, you don't want this one, so and so didn't show up." And he said, "Give it to me anyway."
 Q. And did you give it to him anyway?
 A. Yes, I did.
 Q. And as a result of that concern, did you do any further investigation to determine whether or not the defendant was charging for no shows?
 A. Yes. There was a modem by which the accounts could be reviewed, could be scrolled, and I noticed that that person was indeed charged, and doctor made the comment that his time was scheduled and would be paid for.

 Record at 340–41.

5. Defendant discovered the evidence concerning Hamm during the course of an administrative proceeding conducted by the Kansas State Board of Healing Arts on December 6, 1990. The evidence concerning Kirkham apparently surfaced in late November of 1990, when defendant closed his offices in Kansas and Missouri.

obtain a new trial under Rule 33 based upon newly discovered evidence, the defendant must show that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely cumulative or impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. *United States v. Sutton,* 767 F.2d 726, 728 (10th Cir.1985); *United States v. Conzemius,* 611 F.2d 695, 696 (8th Cir.1979); *see also United States v. Sjeklocha,* 843 F.2d 485, 487 (11th Cir.1988). However, the Tenth Circuit has indicated that such motions are "not regarded with favor and should be granted only with great caution...." *Sutton,* 767 F.2d at 728 (citing *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977)).

 After carefully reviewing the newly discovered evidence submitted by the defendant, the court is unable to conclude that the introduction of such evidence at a new trial would probably produce an acquittal. Generally, newly discovered evidence which is merely cumulative or impeaching will not justify the granting of a new trial. *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956); *United States v. McMahan,* 852 F.2d 337, 339 (8th Cir.1988); *United States v. Anderson,* 532 F.2d 1218, 1230 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976). However, as pointed out by the defendant, it is within the district court's discretion to grant a new trial if "it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result." *United States v. Davila,* 428 F.2d 465, 466 (9th Cir.1970); *accord United*

*States v. Lipowski,* 423 F.Supp. 864, 867 (D.N.J.1976); *see also United States v. Atkinson,* 429 F.Supp. 880, 885 (E.D.N.C. 1977) (holding that, in some circumstances, impeaching evidence is sufficiently important in the ascertainment of truth and in the interests of justice that a new trial should be ordered); *U.S. v. Gordon,* 246 F.Supp. 522, 525 (D.D.C.1965) (holding that the "serious nature" of cumulative or impeaching evidence may justify the court's granting of a new trial). Here, the newly discovered evidence submitted by the defendant is not cumulative but is unquestionably impeaching. Although its introduction at a new trial might cause jurors to more seriously question the veracity of Hamm and/or Kirkham, the court does not believe, in light of the overwhelming circumstantial evidence and the questionable credibility of the defendant's testimony, that a new trial would "probably" result in the defendant's acquittal on Counts 1 through 8 of the indictment.[6] Accordingly, the court finds that the defendant has failed to demonstrate that he is entitled to a new trial.[7]

As a final matter, the court will deny the government's motion to reopen the evidentiary hearing. Further, the court notes that, in ruling on defendant's motion for new trial, it did not consider the affidavit of Leslie K. Haskins submitted with the government's motion to reopen.

IT IS THEREFORE ORDERED that defendant's motion for new trial based upon newly discovered evidence (Doc. # 33) is denied.

IT IS FURTHER ORDERED that the government's motion to reopen the evidentiary hearing (Doc. # 52) is denied.

---

**6.** Nor does the court believe that the introduction of such evidence at the first trial would "likely" have resulted in the jury reaching a different verdict. *Davila,* 428 F.2d at 466. Although at the conclusion of the February 22, 1991, hearing, the court expressed its inclination to grant a new trial because of the new impeaching evidence concerning Hamm and Kirkham, the court has since read the entire trial transcript. There is abundant evidence support-

ing defendant's guilt. The court concludes that the potential impact of the impeaching evidence on the result of trial is not apparent. *United States v. Harris,* 462 F.2d 1033, 1035 (10th Cir. 1972).

**7.** The court finds it unnecessary to address the remaining criteria for the granting of a new trial.