hWALTZER, Judge.
Defendant, demon Lindsey, appeals his conviction and sentence for second degree murder.
STATEMENT OF CASE
On 20 March 1997, defendant, Clemon Lindsey, was indicted for the second degree murder of Leroy Baptiste. The defendant entered a plea of not guilty at his arraignment on 26 March 1997. On 16 May 1997, the defendant filed motions to suppress. After a hearing on 27 August 1997, the trial court denied defendant’s motion to suppress the identification. The defendant was found guilty as charged after a jury trial on 5 February 1998. The defendant filed motions for new trial and post verdict judgment of acquittal on 5 March 1998. The trial court denied the defendant’s motions on 8 April 1998. On the same date, the trial court sentenced the defendant to serve life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant filed a motion to reconsider sentence on 17 April 1998.
STATEMENT OF FACTS
Debra Baptiste, the victim’s ex-wife, stated that she and the victim had been divorced but were planning to remarry. Debra acknowledged that she dated the | ^defendant for a few months after she divorced the victim. On 15 December 1996, she and the victim were sitting outside her daughter’s residence talking to a friend, Aaron Clark, her brother, Hosea, and Hosea’s girlfriend (and defendant’s sister), Gwen. At approximately 10:15 p.m., the defendant stopped his vehicle and approached the group. The victim and Hosea were joking with each other. Debra had asked Tara, her daughter, to come *918 outside because she thought Hosea was trying to instigate trouble. When Tara came outside, Hosea and Gwen were leaving. The victim was talking to Aaron Clark. Shortly thereafter, Aaron decided to go inside. As he was leaving, the defendant stated that “he’ll take somebody out.” The victim asked the defendant “What are you talking about?” The defendant then grabbed the victim and shot him. The victim was unarmed and did not threaten the defendant. After the victim was on the ground, the defendant stepped over the victim, shot him again, and walked to his car. Debra ran to Tara’s apartment and called the police. She stated that while the victim had used cocaine in the past, she did not know if he was high that night. She testified that he was not drunk. The witness admitted to prior convictions for battery and negligent injury that arose out of a domestic dispute.
Aaron Clark testified that he passed by Law Street on 15 December 1996. When he saw the victim and his ex-wife standing outside, he stopped to visit with them. Hosea, Gwen and the defendant were outside with the victim and his ex-wife. Hosea and the victim were joking around. After Hosea and Gwen decided to leave, he decided to leave. As he walked to his car, he heard the defendant and the victim in a heated argument. When he heard gunshots, he ducked and turned around. The witness saw the defendant holding a gun. The victim stumbled into |sthe street. Debra Baptiste yelled, “Stop, please don’t shoot him no more.” Clark stated that the victim was not armed and did not appear to be intoxicated.
Tara Baptiste, the victim’s daughter, testified that on 15 December 1996, she lived at 1862 Law Street. She had seen the defendant earlier that day near her house. Tara stated that she and her sister stopped to talk to the defendant. The defendant told them that someone had shot up his vehicle the night before. The defendant took a gun out of his pants and said he was going to get the person who shot his car. The defendant did not mention the witness’ father. Later that night around 10:15 p.m., Tara was at home playing cards with her younger brother. Her mother, who was outside with her father, sent a young boy to call Tara outside. When Tara went outside, she saw the defendant. The defendant was telling his brother, Gary, to move his vehicle. Tara spoke with her mother. Tara’s father approached Tara and gave her a hug. Tara’s younger brother and her neighbor, Aaron, came outside at the same time. Tara’s father told her that he and her uncle were joking and that Tara’s mother was upset. Tara told her mother that they should stop “clowning around.” The defendant asked Tara “What’s up Tee?” Tara said “nothing.” The defendant then told her that “nothing’s going to happen out here tonight.” Tara walked back to her apartment. As she reached the door, she heard four gunshots and her mother yelling that the defendant shot her father. Tara ran back toward the street and saw her father lying in the street. Tara testified that when she went outside she saw that the defendant had a gun in his waistband. She stated that her father was not armed. Tara acknowledged that her father used drugs. She further testified that her father was not high or drunk that night. Tara stated that her mother had dated the defendant for a short time after her mother and father divorced.
|4Leroy Baptiste, Jr., the victim’s son, was playing cards with his sister, Tara, at her house on the evening of the shooting. Their mother asked him and Tara to go outside. Tara’s mother said that his uncle was trying to start a fight with his father. When he went outside, he noticed the defendant, Tara, his mother, his father, his uncle Hosea and Hosea’s girlfriend, Gwen, standing near the street. Their neighbor, Aaron Clark, was also outside. There was no argument between his uncle and his father. They had been- kidding with each other. Leroy stated that he went back inside about five minutes later. While in *919 side, he heard four gunshots. Leroy then ran outside and saw that his father had been shot. He acknowledged that his father used cocaine. The witness stated that his father did not own or possess a weapon. Leroy admitted to a conviction for possession of a stolen car and possession of a stolen weapon. The offenses occurred in June and July of 1997, after his father was killed.
Detective Arthur Kaufman testified that he took a statement from Debra Baptiste at approximately 11:30 p.m. on 15 December 1996. She stated that the defendant and the victim had an argument over another woman. She told the officer a physical altercation occurred between the defendant and the victim.
Detective Richard Williams, the lead homicide investigator, arrived on the scene after the victim had been transported to the hospital. Detective Williams testified that he spoke with several witnesses, including Hosea Reine and Leroy Baptiste, Jr., and took statements from Debra Baptiste and Aaron Clark. The witnesses indicated that there had been a verbal altercation between the two men but that the victim was unarmed. Detective Williams also prepared photographic lineups which included the defendant’s photograph and showed them to Debra LB ap tiste and Aaron Clark. Baptiste and Clark identified the defendant as the person who shot the victim.
Dr. Susan Garcia, a forensic pathologist, performed an autopsy on the victim. Dr. Garcia testified that the victim died from four gunshot wounds to the chest, abdomen and side. The two most lethal injuries were to the victim’s chest and shoulder area. One bullet entered above the left nipple and injured both lungs, heart and liver. Another bullet entered near the right shoulder and injured the right lung. Two bullets were recovered during the autopsy. The victim had a blood alcohol level of .26. Cocaine was also found in the victim’s body.
Officer Luther Randall processed the crime scene. He photographed the scene and collected four Winchester .380 automatic spent casings and one pair of slippers. Officer Kenneth Leary examined the four casings found on the scene and the two bullets recovered during the autopsy. Officer Leary testified that the four casings were fired from the same weapon. The two bullets recovered during the autopsy were fired from the same weapon.
Officer Herman Franklin investigated a shooting which occurred the night before, on 14 December 1996, at approximately 3:25 a.m. The defendant called the police after someone shot at his vehicle. The officer noted there were bullet holes on the driver and passenger’s side doors. The defendant told the officer that “Paul Brady” shot up his car.
The defendant, Clemon Lindsey, testified on his own behalf. He stated that he had dated Debra Baptiste for a couple of years. He did not know she and the defendant were getting back together at the time of the shooting. On 14 December 1996, the defendant went to the Sand Pit, a club on St. Claude Avenue, with his brothers and their friends. At approximately 12:00 a.m., the defendant’s brother, | BTroy, and his girlfriend, Evelyn, decided they were ready to go home. The defendant decided to leave at the same time. As the defendant was walking to his car, someone started shooting at him. The defendant jumped into the driver’s side and his brother, Tyrone, got in the passenger side of his vehicle. The defendant drove off as fast as possible. The defendant recognized Paul Bailey with four other men. The defendant went to his mother’s house and called the police. An officer came out, and a report of the shooting was made. After the police left, the defendant saw Leroy Baptiste, Paul Bailey and three other men in a vehicle near his mother’s house. They yelled for the defendant to come out of the house. The defendant left the house through the back door.
*920 The next day, the defendant went to Plaquemines Parish to work on a vehicle. After defendant got home, he went to his brother’s house on Law Street. When the defendant returned home, he received a phone call from his sister, Shawanda, asking the defendant if she could borrow money to purchase diapers and Tylenol. The defendant told his sister that he would see if Troy would bring the money to her because he was afraid to go into that area. Shawanda lived in the same apartment complex as Tara Baptiste. Leroy Baptiste had told the defendant he would kill the defendant if he caught the defendant with his wife. However, the defendant picked up his friend, Rodney Caesar, and took the money to his sister. As the defendant was leaving the apartment complex, the victim saw the defendant and made derogatory remarks to him. The victim was armed and with Paul Bailey. The defendant told the victim he did not want any trouble. The victim started beating the defendant with the gun and kicking the defendant in the abdomen. Debra Baptiste came outside and told the victim to stop beating the defendant. The victim then hit Debra and knocked her down in the street. The 17victim said he was going to kill the defendant. The defendant took his gun out of his pocket and shot the victim. The defendant ran to his car and drove off.
On cross examination, the defendant admitted to convictions for hit and run, negligent injury and attempted simple kidnapping.
Shawanda London, the defendant’s sister, testified that in December 1996, she and her husband, John London, lived at 1860 Law Street. Tara Baptiste lived in the same complex. London stated that she did not see the shooting. She had called her brother earlier that evening about borrowing money. When he took the money to her, he told her that someone had shot up his car. After the defendant left, she went to sleep. London testified she was sleeping at the time of the shooting.
John London, Shawanda’s husband, was in bed when he heard the gunshots. He ran outside and heard Debra screaming “They killed Leroy.” He returned inside and called 911. London testified that the victim used cocaine and had a violent temper. On cross examination, the witness acknowledged prior convictions for aggravated battery, simple battery and unauthorized entry of an inhabited dwelling.
Rodney Caesar testified that he went with the defendant to his sister’s house on the evening of 15 December 1996. After the defendant parked his car, Caesar walked to the store while the defendant went to his sister’s house. When Caesar came back from the store, he saw a guy lying in the street. Caesar stated that he saw a woman pick up a gun and take it inside an apartment.
On rebuttal, Det. Williams testified that he spoke with Shawanda London a couple of days after the shooting. Ms. London told the officer that the defendant lived on Touro Street with his girlfriend. Ms. London stated that she did not see [sthe shooting. She was sleeping at the time of the shooting. She further told the officer that she had last seen her brother a couple of days before the shooting. She did not tell Detective Williams that she saw the defendant on the day of the shooting.
Officer Terry Mercedal conducted the follow-up investigation of the shooting on 14 December 1996. The officer compiled a photographic lineup including Paul Bailey’s photograph and attempted to show the lineup to the defendant. However, the defendant refused to view the lineup. At no time did the defendant mention the victim’s name.

ERRORS PATENT

A review of the record for errors patent reveals that the trial court sentenced the defendant immediately after denying the defendant’s motions for new trial and post verdict judgment of acquittal. The minute entry of the sentencing does not reflect that the defendant waived his *921 right to a twenty-four hour delay between the denial of his motions and sentencing. LSA-C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant’s sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present case where no error is raised as to the defendant’s sentence, the failure of the trial court to observe the delay period would be considered harmless error.

\ ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant contends that the trial court erred when it denied his motion for new trial based upon newly discovered evidence. The defendant contends that the trial court should have granted his motion for new trial based upon the fact that he had just found another eyewitness to the shooting who would testify that she saw the victim attack the defendant. The defendant based his motion on the affidavit of Earnestine Taylor.
In the affidavit, Taylor stated that she lived in the apartment complex located at 1860 Law Street on the date of the shooting. She stated that she was entering her apartment at the time of the shooting. The defendant and the victim were involved in an argument. The victim struck the defendant with a gun and knocked the defendant to the ground. The- victim pointed his gun at the defendant. At the same time, the defendant pulled out his gun. The shooting started, and she ran inside. She stated she heard six shots. She did not go outside until an ambulance arrived. Taylor stated in her affidavit that Debra Baptiste asked her to lie about what she saw. Taylor declined to do so and began receiving threats from the Baptiste family. She moved out of the apartment complex one month after the shooting because of the threats she had received.
LSA-C.Cr.P. art. 851 provides, in part, that a new trial shall be granted on motion of defendant whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; ....
In State v. Cavalier, 96-3052 (La.10/31/97); 701 So.2d 949, the court stated:
A defendant seeking a new trial based on newly discovered 1 inevidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Hammons, 597 So.2d 990, 994 (La.1992); State v. Knapper, 555 So.2d 1335, 1339 (La.1990); State v. Prudholm, 446 So.2d 729, 735 (La.1984). In ruling on the motion, “[t]he trial judge’s duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury’s judgment.” Prudholm, 446 So.2d at 736.
Newly discovered evidence affecting only a witness’s credibility “ordinarily will not support a motion for a new trial, because new evidence which is ‘merely cumulative or impeaching’ is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.” Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, *922 5, 1 L.Ed.2d 1, 5 (1956). Nevertheless, the court possesses the discretion to grant a new trial when the witness’s testimony is essentially uncorroborated and dispositive of the question of guilt or innocence and it “appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result.” United States v. Davila, 428 F.2d 465, 466 (9th Cir.1970); accord United States v. Davis, 960 F.2d 820, 825 (9th.Cir.), cert. denied, 506 U.S. 873, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992); United States v. Taglia, 922 F.2d 413, 415-16 (7th Cir.1991); United States v. Harpster, 759 F.Supp. 735, 738 (D.Kan.), aff'd 951 F.2d 1261 (10th Cir.1991); United States v. Lipowski, 423 F.Supp. 864, 867 (D.N.J.1976); see also State v. Bryan, 398 So.2d 1019, 1021-22 (La.1980) (on rehearing). In making this determination, the court may assume that the jury “would have known that [the witness] had lied about the matter[.]” United States v. Stofsky, 527 F.2d 237, 246 (2nd Cir.1975), cert. denied, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976).
96-3052 at pp. 3-4; 701 So.2d at 951-52.
A trial. court’s assessment of the legal merits of such a motion is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. State v. Payn, 92-0975, p. 4 (La.App. 4 Cir. 7/26/95); 659 So.2d 527, 529, vacated in part on other grounds, 95-2166 (La.1/26/96); 666 So.2d 661, citing State v. Humphrey, 445 So.2d 1155, 1159-60 (La.1984).
[uln the present case, the trial court denied the defendant’s motion for new trial finding that Taylor’s testimony would not change the jury’s verdict. The court determined that Taylor’s testimony would be cumulative to the defendant’s testimony that the victim was armed and that Lindsey acted in self-defense. We find no error in the trial court’s assessment. Taylor’s affidavit introduces no new evidence from that already introduced at trial. The defendant testified that the victim beat him with a gun and threatened to kill him. The defendant testified that he pulled out his gun and shot the victim after the victim threatened him. The defendant, attempted to corroborate his testimony at trial with the testimony of Rodney Caesar who stated that he saw a woman pick up a weapon from the scene after the shooting. Taylor’s testimony is cumulative to the defendant and Rodney Caesar’s testimony. The trial court correctly denied defendant’s motion for new trial.
This assignment is without merit.

CONCLUSION

Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
LANDRIEU, J., Dissents.