UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert B. SUTTON,
Defendant-Appellant.

No. 82–1841.

United States Court of Appeals,
Tenth Circuit.

April 23, 1984.

Mitchell B. Lansden, Baton Rouge, La. (W. Rodney DeVilliers, Sr. of DeVilliers & DeVilliers, Oklahoma City, Okl., with him on the brief), for defendant-appellant.

William J. Hardy, Washington, D.C. (Frank Keating, U.S. Atty., Tulsa, Okl., and Richard A. Sauber, Atty., Dept. of Justice,

Criminal Division, Washington, D.C., with him on the brief), for plaintiff-appellee.

Before BARRETT and LOGAN, Circuit Judges, and CHILSON, District Judge *.

LOGAN, Circuit Judge.

Defendant Robert B. Sutton appeals his conviction on one count of obstruction of justice, a violation of 18 U.S.C. § 1505, and one count of conspiracy to obstruct justice, a violation of 18 U.S.C. § 371. Those were the last two counts of a seventeen-count indictment. The first fifteen counts alleged racketeering, mail fraud, and wire fraud and were based on allegations that defendant falsely certified and sold crude oil in violation of federal regulations setting ceiling prices for various categories of crude oil. Two corporations wholly-owned by defendant, BPM, Ltd., and Scurry Oil Company, were also named in the first fifteen counts.

After the government rested its case against the defendants, the trial court found that the government had not met its burden of proof on counts one through fifteen and accordingly entered judgments of acquittal on those counts. The government sought immediate review of the trial court's order in this Court. A panel of this Court reversed that order and directed the trial court to submit all seventeen counts to the jury. *United States v. Ellison,* 684 F.2d 664 (10th Cir.1982). This Court then heard argument en banc and reversed the panel decision. *United States v. Ellison,* 722 F.2d 595 (10th Cir.1982). After the Supreme Court denied a stay pending resolution of the government's petitions for mandamus and certiorari, the trial resumed. The jury then found defendant guilty on count seventeen, conspiracy to obstruct justice, but could not reach a verdict on count sixteen, obstruction of justice. The trial court declared a mistrial on the obstruction of justice count, and a few weeks later defendant was retried and convicted. The trial court then sentenced de-

fendant to five years in prison on each count, with the sentences to run concurrently, and assessed fines on each count.

The government contended that defendant obstructed justice by advising Gaylord Simon, a BPM employee, to destroy certain records that the Department of Energy (DOE) had directed defendant, as president of BPM, to produce. Michael Bloese, formerly an auditor for the DOE, testified that he served an administrative subpoena at the office of BPM on June 30, 1978, directing defendant to produce certain records, including purchase and sales invoices, so that the DOE could conduct an audit of BPM. The subpoena was introduced into evidence. Charles Wooten, an attorney for defendant, testified that he hired an accountant, William Johnson, in July 1978 to analyze certain BPM purchase and sales invoices and that Johnson took several boxes of BPM records to his office in LaFayette, Louisiana. Dennis Briggs, an employee of one of defendant's companies and defendant's brother-in-law, testified that Simon sent him to pick up the records from Johnson and that he picked up all but one of the boxes and moved them to an ice house in Crowley, Louisiana. Briggs testified that when he told defendant that Johnson still had one box, defendant became upset. Soon after Briggs moved the boxes, vandals destroyed all the records in the ice house.

Gaylord Simon testified that another BPM employee instructed him to pick up the box of records at Johnson's house. Simon did so and then went to LaFonda's Restaurant and called defendant. Simon testified that defendant told him to destroy the records, and that defendant said he would never mention the box again. The government introduced telephone company records to corroborate Simon's testimony, showing that a call was made to the office of Paul McBride, another of defendant's attorneys, from LaFonda's. Simon testified that he disobeyed defendant's instruc-

---

* Honorable Hatfield Chilson, Senior United States District Judge for the District of Colorado, sitting by designation.

tions and kept the box. Later he gave the box to Jack Clothier, a former business associate of defendant.

Richard Fishkin, a Justice Department lawyer, testified that Paul Wolff, another of defendant's attorneys, wrote him in January 1980 that Jack Clothier and his attorney, William Lambert, might have documents that were the subject of the subpoena served on BPM. Ellis Blount, an FBI agent, testified that William Lambert surrendered a box of records in response to a subpoena ordering Lambert to turn over any BPM records in his possession. Blount identified a box as the one Lambert had given him. That box was admitted into evidence. Another FBI agent, David Brechwald, testified that he examined the contents of the box and found that it contained BPM invoices from late 1976 to early 1978.

To prove count seventeen, the conspiracy count, the government introduced tapes of conversations between defendant and Carlos Marcello. In addition, the government introduced evidence of unrecorded meetings between defendant and Marcello. The tapes reveal that defendant told Marcello he wanted Marcello to prevent Lambert and Clothier from talking to the FBI. The jury's guilty verdict necessarily represented a finding that Marcello agreed to defendant's request.

At the second trial the government introduced substantially the same evidence to prove obstruction of justice as at the first trial. To prove motive, the government offered testimony that defendant had bought oil for which there was a ceiling price and sold it as oil for which there was no ceiling price. The jury convicted defendant on this count at the second trial.

On appeal defendant challenges the validity of the indictment against him, argues that the trial court should have granted his motion to sever, and contends that after the trial court entered judgment on the first fifteen counts of the indictment, the government was collaterally estopped from proceeding against him on the remaining counts. Defendant also contends in regard to the first trial: (1) that the court errone-

ously admitted statements of Carlos Marcello; (2) that parts of tape-recorded conversations played at trial were prejudicial; (3) that the court erred in not allowing defendant to question a witness about charges pending against her; (4) that the court should not have admitted the box of records; (5) that the evidence was insufficient to support a conviction on the obstruction of justice count; (6) that the evidence was insufficient to support the conviction for conspiracy; (7) that the court should have granted a mistrial after it entered judgments of acquittal on the first fifteen counts; and (8) that the court erred in instructing the jury that there were no missing witnesses in the case.

In regard to the second trial defendant contends: (1) that the court abused its discretion in its conduct of voir dire; (2) that the court erred in not allowing defendant to inform the jury of his acquittal on the first fifteen counts of the original indictment; (3) that the court erroneously admitted testimony by Gaylord Simon's wife; (4) that the court erroneously admitted testimony by defendant's former lawyer; (5) that the court did not properly question the jurors about possible prejudicial publicity and contact with third parties; (6) that there was insufficient evidence of obstruction of justice to support the conviction; and (7) that the trial court improperly instructed the jury on the credibility of witnesses.

I

 Defendant argues that the trial court should have dismissed the indictment in this case because the government failed to present to the grand jury exculpatory evidence relevant to the conspiracy count. Defendant argues that comments Marcello made during various tape-recorded conversations tended to prove that Marcello did not intend to conspire with defendant. The jury heard some of the evidence defendant claims was exculpatory but convicted him on the conspiracy count nonetheless. Even assuming that Marcello's comments were exculpatory, defendant's argument has no

merit. This Court considered a similar claim in *United States v. Gutierrez*, 696 F.2d 753 (10th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). In that case we wrote:

"Ordinarily ... an indictment is not subject to challenge on the ground of incompetent evidence. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). And thus, 'an indictment returned by a legally constituted and unbiased grand jury, valid on its face is sufficient to call for trial of the charge on the merits.' *United States v. Hubbard*, 603 F.2d 137, 141 (10th Cir. 1979)."

*Id.* at 754–55.

Defendant does not claim that the indictment in this case is facially invalid. We reject defendant's challenge to the indictment.

## II

■ Before trial defendant moved for a severance of counts sixteen and seventeen. Because all the counts grew out of the same scheme, joinder was proper under Fed.R.Crim.P. 8(a). Defendant argued that evidence on counts sixteen and seventeen would unfairly prejudice the jury against him on the first fifteen counts. Since the trial court entered judgments of acquittal on the first fifteen counts, there was no harm to defendant on those counts. We find no abuse of discretion in the trial court's refusal to sever.

## III

■ Defendant argues that because the trial court entered judgments of acquittal on the first fifteen counts of the original indictment, the government was estopped from proceeding against him on the remaining counts. Defendant cites *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), for the proposition that when a valid and final judgment determines an issue of ultimate fact in a criminal case, the Double Jeopardy Clause bars relitigation of that ultimate fact. The rule of *Ashe* is inapplicable here. The elements

of obstruction of justice and conspiracy to obstruct justice are different from the elements of the crimes of which defendant was acquitted. Thus, defendant's acquittal on the racketeering, mail fraud, and wire fraud counts determined no issue of ultimate fact that was necessary to a conviction on either of the remaining counts.

## IV

■ Defendant claims that the trial court improperly admitted statements of Carlos Marcello against defendant as statements by a coconspirator in furtherance of a conspiracy because there was not substantial evidence independent of those statements to establish the existence of a conspiracy. *See United States v. Stipe*, 653 F.2d 446 (10th Cir.1981). The trial court held a pre-trial hearing at which it correctly determined that there was substantial independent evidence of a conspiracy. Defendant's own statements on tape that he wanted Marcello to prevent Lambert and Clothier from going to the FBI were not hearsay. Fed.R.Evid. 801(d)(2)(A). Those statements and Marcello's statements implicitly agreeing to comply with defendant's request constituted substantial independent evidence of a conspiracy between defendant and Marcello. Thus, other statements by Marcello in furtherance of the conspiracy were admissible without a limiting instruction. Fed.R.Evid. 801(d)(2)(E).

## V

■ Defendant claims that the court erred in allowing the government to play part of a tape recording of a conversation between defendant and Carlos Marcello in which defendant told Marcello that defendant's lawyer thought he was guilty and advised him to plea bargain. The conversation tended to prove motive and consciousness of guilt; evidence of both is admissible. *See United States v. Smith*, 629 F.2d 650, 652 (10th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980); *United States v. Rowe*, 565 F.2d 635, 638 (10th Cir.1977).

## VI

■ Defendant claims that the trial court denied him his right to confront the witnesses against him by refusing to permit his counsel to question a witness, Jean Brown, about theft charges pending against her in Texas. Defendant argues that he needed to inquire about those charges to show bias, citing *Davis v. Alaska*, 415 U.S. 308, 317, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The trial court gave defense counsel great latitude in questioning Brown about her involvement in illegal activities and about any special treatment she might expect to receive because of her testimony. Defendant asserts that Brown testified before the grand jury that she blamed defendant for the charges pending against her in Texas, and that therefore it was necessary for defense counsel to ask her about those charges specifically. In the portion of Brown's grand jury testimony that defense counsel read to the judge, Brown denied the allegations against her but did not blame Sutton for the charges. The trial court did not abuse its discretion when it disallowed questioning about the charges pending against Brown.

## VII

■ Defendant argues that the court erred in admitting Exhibit 53, the box that William Lambert gave Agent Blount in response to a subpoena to turn over any records of BPM and several other companies in his possession. Defendant claims that the box was not properly authenticated. Fed.R.Evid. 901(a) provides:

> "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

The government introduced Exhibit 53 simply as the box that William Lambert gave Agent Blount, and Agent Blount identified the box. The prosecution asked the jury to infer that Exhibit 53 was the same box of BPM records that Jean Brown had compiled and the same box of records that

defendant had directed Gaylord Simon to destroy. The inference was a reasonable one in light of all the evidence. We find no error.

## VIII

■ Defendant argues that the government produced insufficient evidence at the first trial to support a conviction for obstruction of justice, and that the trial court should have entered a judgment of acquittal rather than mistrial on that count. We must view the evidence and all reasonable inferences from the evidence in the light most favorable to the government. *United States v. Goldstein*, 695 F.2d 1228, 1235 (10th Cir.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). First, defendant argues that the government introduced insufficient evidence to prove, as it must under 18 U.S.C. § 1505, that a proceeding of a department or agency of the United States was pending at the time of the alleged obstruction. Michael Bloese, formerly an auditor for the United States Department of Energy, testified that he had served a subpoena on a BPM employee that directed defendant, as president of BPM, to produce certain records so that the DOE could conduct an audit of BPM. Agency investigative activities are "proceedings" within the meaning of § 1505. *United States v. Browning, Inc.*, 572 F.2d 720, 723 (10th Cir.), *cert. denied*, 439 U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978). Defendant argues that there was no "proceeding" pending because the time for compliance with the subpoena had passed by the time of the alleged obstruction. We disagree. It would be absurd to conclude that someone could end a "proceeding" simply by failing to timely comply with a subpoena.

■ Second, defendant argues that the government did not prove that he knew about the proceeding. Again, we disagree. The jury could have reasonably inferred from the service of the subpoena at BPM's office and from the evidence of defendant's subsequent behavior that defendant knew about the DOE audit.

■ Third, defendant argues that there was insufficient proof that what defendant allegedly asked Simon to destroy were BPM records and thus the subject of the subpoena. Simon testified that he gave a box of records to Clothier. A letter written by one of defendant's attorneys stated that Lambert and Clothier had records sought by the BPM subpoena. This is sufficient evidence that the records defendant directed Simon to destroy were BPM records.

## IX

Defendant claims that the government produced insufficient evidence of Carlos Marcello's intent to accomplish an illegal objective to support defendant's conviction for conspiracy to obstruct justice. In evaluating defendant's contention we must view the evidence in the light most favorable to the government and determine whether the evidence is sufficient to justify a verdict of guilt beyond a reasonable doubt. *United States v. Goldstein*, 695 F.2d at 1235.

■ When defendant told Marcello that he wanted Marcello to prevent William Lambert and Jack Clothier from talking to the FBI, Marcello implied that he agreed to do so. For example, he told defendant to give him addresses so he would not get the wrong people. When defendant offered to send someone to help Marcello, Marcello refused the offer and said, "Just give me them two and you handle your other one." Later Marcello called his lawyer to get information about Lambert and Clothier. Defendant relies on two taped conversations to argue that the evidence creates a reasonable doubt that Marcello intended to do defendant's bidding. The jury heard the Marcello-Noland-Williams conversation and obviously did not consider it sufficiently exculpatory to create a reasonable doubt on guilt. The other, between Marcello and his lawyer, was not introduced into evidence. The excerpts from that conversation available to us are insufficient to show that Marcello was insincere when he agreed to comply with defendant's request. Viewed in the light most favorable to the

government, the evidence is sufficient to support the jury's finding that Marcello intended, at least for a time, to accomplish defendant's proposed objective.

## X

Defendant argues that the trial court erred in refusing to grant a mistrial on the remaining counts after the court entered judgments of acquittal on the first fifteen counts of the original indictment. Because the jurors had heard evidence relevant to the first fifteen counts, defendant argues, they could not fairly consider the remaining counts.

■ Although a trial court should be sensitive to the possibility of prejudice under such circumstances, *cf. Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960) (joinder of defendants rather than counts), the trial court did not abuse its discretion by refusing to grant a mistrial. The court instructed the jurors that they were to consider only the remaining two counts in the indictment. The evidence on the conspiracy count and the obstruction count was distinct from the other evidence presented, and the judge explained to the jurors what facts they must find to convict defendant on those counts.

■ Defendant also argues that the trial court should have granted a mistrial because the evidence became stale during the twelve days between entry of acquittal on the first fifteen counts and resumption of the trial. This is a matter of judgment, but we note that often in complex cases there are substantial lapses between the time the jury hears particular evidence and the time it commences deliberation. We hold that the trial court did not abuse its discretion in refusing to grant a mistrial after a twelve-day delay.

■ Finally, defendant argues that, at the very least, the trial court should have informed the jury that defendant had been acquitted on the first fifteen counts of the original indictment. The trial court instructed the jury that the first fifteen

counts had been "otherwise disposed of" and that they were to consider only the remaining counts. We find no abuse of discretion.

"A judgment of acquittal is relevant to the legal question of whether the prosecution is barred by the constitutional doctrine of double jeopardy or of collateral estoppel. But once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted. Not only does the inference appellants suggest not flow from the judgment of acquittal ..., but also a judgment of acquittal is hearsay. The Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction, Rule 803(22), not judgments of acquittal."

*United States v. Viserto*, 596 F.2d 531, 537 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979).

## XI

Defendant argues that he was denied the right to confront the witnesses against him because the trial court gave a missing witness instruction but then instructed the jury that there were no missing witnesses in this case. Defendant also complains because the prosecution was allowed to tell the jury that defendant could have called any "missing witnesses" to the stand.

■■■ A trial court has discretion to give or refuse to give a missing witness instruction. *United States v. Montoya*, 676 F.2d 428, 431 (10th Cir.1982), *cert. denied*, 459 U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1983). Before jury argument in this case the court announced that it would give a general missing witness instruction. However, the court warned defense counsel that any reference to missing witnesses would open the door for the government to explain that the defendant had subpoena power and could have called the witnesses himself. This was, in effect, a ruling that there were no missing witnesses in the case. Defense counsel did argue to the

jury that the government had failed to call certain witnesses; the government responded by informing the jury that the defendant could have subpoenaed the witnesses. After jury argument the trial court agreed to append to the missing witness instruction the statement that there were no missing witnesses in this case.

■■■ The trial court did not abuse its discretion in concluding that there were no missing witnesses. The defense did not adequately show that it was solely within the government's power to physically produce the witnesses or that the witnesses' relationship with the government was such that the witnesses were effectively unavailable to the defense. *See United States v. Montoya*, 676 F.2d at 430–31; *United States v. Mahone*, 537 F.2d 922, 926–27 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *United States v. Blakemore*, 489 F.2d 193, 195–96 (6th Cir.1973). Since the trial judge determined that there were no missing witnesses in this case, it would have been wiser for the trial court not to have given any missing witness instruction. But the trial court did not abuse its discretion, particularly since defense counsel referred to missing witnesses in closing argument after the court had warned that such argument would open the door to response by the government. Also, the issue of missing witnesses arose in regard to count sixteen, on which the jury hung. Thus, any error would have been harmless.

## XII

Defendant's first claim in regard to the second trial is that the court abused its discretion in conducting voir dire of prospective jurors. Defendant argues that the voir dire impaired his right to exercise his peremptory challenges and denied him due process of law. He bases his claims on the court's dismissal of seventeen jurors who had substantial knowledge of previous proceedings against defendant.

At the time of voir dire the court was holding the defendant's motion for a change of venue in abeyance until it could

determine the feasibility of impaneling an impartial jury. Defendant had asserted that prejudicial publicity necessitated a change of venue. Consequently, the judge was particularly sensitive to prospective jurors' knowledge of the case. The judge excused any prospective juror who demonstrated more than slight knowledge of prior proceedings in the case in an attempt to select a jury fair to both sides. Defense counsel acknowledged during voir dire that a prospective juror's knowledge can "cut both ways." One of the dismissed jurors commented, "[A]s far as I'm concerned he [defendant] is sitting over there a multi-millionaire while I'm down here losing money." Another said she knew that the defendant had previously "got off with" a number of counts. Several times defense counsel expressly agreed with the judge's decision to excuse prospective jurors with knowledge, and in many other instances defense counsel remained silent. The jurors with knowledge of the case who were not excused generally had only vague knowledge. Those with more substantial knowledge convinced the judge of their ability to be impartial.

■■■ The conduct of voir dire is within the sound discretion of the trial judge. *Ristaino v. Ross,* 424 U.S. 589, 594, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976). "This is so because the 'determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge.' *Rideau v. Louisiana,* 373 U.S. 723, 733, 83 S.Ct. 1417, 1422, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting)." *Ristaino v. Ross,* 424 U.S. at 594–95, 96 S.Ct. at 1020. The government has as much right to an impartial jury as the defendant. *Hayes v. Missouri,* 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887). The trial court in the instant case acted reasonably in attempting to impanel an impartial jury.

### XIII

■■■ Defendant argues that the trial court erred in allowing the government to introduce evidence of the crimes of which defendant was acquitted at his first trial. "Evidence of another crime, otherwise competent, is not necessarily rendered inadmissible by the fact that the accused was acquitted of such charge." *United States v. Van Cleave,* 599 F.2d 954, 957 (10th Cir.1979). Evidence that defendant falsely certified crude oil logically tended to show defendant's motive and intent to obstruct justice.

■■■ Defendant also argues that he should have been able to introduce evidence of his acquittal on the fraud counts since the government introduced evidence of fraud. ·

> "Although a judgment of acquittal is relevant with respect to the issues of double jeopardy and collateral estoppel, 'once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted.' *United States v. Viserto,* 596 F.2d 531, 537 (2d Cir.1979)."

*United States v. Kerley,* 643 F.2d 299, 300 (5th Cir.1981).

Also, as noted above, a judgment of acquittal is hearsay, and there is no exception to the hearsay rule for judgments of acquittal. *United States v. Viserto,* 596 F.2d at 537. *But cf.* Fed.R.Evid. 803(22) (excepting judgments of conviction from the hearsay rule).

### XIV

■■■ Defendant contends that the trial court erred in allowing Gaylord Simon's wife to corroborate her husband's testimony that her husband made a phone call from LaFonda's Restaurant in LaFayette, Louisiana, and then told her that defendant had instructed him to destroy some records.

Under Fed.R.Evid. 801(d)(1)(B) evidence of a prior consistent statement by a witness is not hearsay if it is offered to rebut an express or implied charge against the witness of recent fabrication. The trial court must determine whether a statement

is offered for that purpose. *United States v. Herring*, 582 F.2d 535, 541 (10th Cir. 1978). At trial defense counsel attempted to show that Mr. Simon was involved in a scheme to blackmail defendant with threats of turning over a box of records to law enforcement officers. On cross-examination defense counsel asked Mr. Simon, "Who was the first person you ever told that you called Bob Sutton at Paul McBride's office at noon on December 19, 1978"? The trial judge, who could see and hear defense counsel's cross-examination of Mr. Simon, reasonably concluded that defense counsel was trying to create the impression that no conversation between Mr. Simon and defendant ever took place and that Mr. Simon recently had fabricated his testimony. The trial judge instructed the jury that Mrs. Simon's statement was not admitted to prove what defendant said. The trial court properly admitted Mrs. Simon's testimony.

### XV

■ Defendant argues that the admission of testimony by defendant's former attorney, Paul McBride, violated the attorney-client privilege. After hearing McBride's proposed testimony outside the presence of the jury, the trial judge excluded testimony about some conversations between defendant and McBride, but permitted McBride to testify that defendant had said that he was smarter than President Nixon and that he would destroy certain records so that the government could not get them. The attorney-client privilege does not protect disclosure of plans for future illegal activity. *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *see also In re September 1975 Grand Jury Term*, 532 F.2d 734, 737 (10th Cir.1976). McBride's testimony was properly admitted.

### XVI

During the second trial a program titled "The Oil Game" appeared on television. Defendant claims that the trial court refused his request to determine whether any jurors had seen the program. This claim is baseless. The trial judge asked the jurors whether any of them had seen a show that bore directly or indirectly on defendant's trial. None had. Defense counsel had previously stated that a general inquiry would be sufficient, and defense counsel did not object to the court's inquiry.

■ After the trial the trial court learned that one of the jurors had received telephone calls about defendant during the trial. The judge questioned the juror and found that the juror's maid claimed to have answered the phone several times one day during trial and heard a voice whisper, "Sutton, Sutton." The juror stated that the maid's report had not affected her deliberations. The trial court refused defense counsel's request to call the other jurors back to question them. "The district court ... is endowed with considerable discretion in determining the scope and nature of the investigation needed to evaluate the effect of an impermissible jury contact." *United States v. Almonte*, 594 F.2d 261, 266 (1st Cir.1979). The trial court did not abuse its discretion in refusing to call back other jurors because of this minor incident.

### XVII

■ Defendant argues that the government produced insufficient evidence to support his conviction for obstruction of justice because Simon could not identify the box introduced into evidence as the box he picked up at Johnson's house. Simon's identification was not necessary to support a conviction. There was sufficient evidence in the second trial, as in the first trial, from which the jury could reasonably infer that the box introduced at trial was the same box Simon picked up.

### XVIII

■ Defendant claims that the trial court erred in refusing to give defendant's proposed instructions on the credibility of various witnesses. The trial court's general instructions concerning impeachment and credibility adequately explained the effect of impeachment testimony. *See De-*

*vine v. United States,* 403 F.2d 93, 95–96 (10th Cir.1968), *cert. denied,* 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969).

AFFIRMED.