<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 96-2187

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

                     LUIS A. MARRERO-ORTIZ,

                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT
                                 
                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
          Aldrich and Coffin, Senior Circuit Judges.
                                

    Ivan Dominguez for appellant.
    Grace Chung Becker, Trial Attorney, U.S. Dept. of Justice,
with whom John C. Keeney, Acting Assistant Attorney General, and
Theresa M.B. Van Vliet  were on brief, for the United States.

November 17, 1998

 SELYA, Circuit Judge.  In the wake of his conviction on
a charge of conspiracy to possess controlled substances with intent
to distribute, see 21 U.S.C.  841(a)(1), 846 (1994), defendant-
appellant Luis Marrero-Ortiz (Marrero), one of thirty-one
defendants named in a wide-ranging indictment, claims that the
district court committed a host of errors.  We have reviewed the
trial record with care and find Marrero's multi-pronged attack on
his conviction meritless.  Withal, one aspect of the trial court's
sentencing determination gives us pause.
 With this brief prelude, we proceed to discuss Marrero's
principal assignments of error, segregating those points that
relate to his conviction from those that relate to sentencing.
                         Trial Issues   
    We start by addressing those assignments of error that
center on the trial.   
    1.  Sufficiency of the Evidence.  On a defendant's timely
motion, a federal trial court is constrained to order a judgment of
acquittal with respect to any given charge if the government fails
to present sufficient evidence to sustain a conviction.  See Fed.
R. Crim. P. 29(a).  In this instance, the appellant sought   but
did not secure   judgment of acquittal under Rule 29.  We review
the district court's determination de novo, applying precisely the
same standard that obtained below:  "whether, after assaying all
the evidence in the light most amiable to the government, and
taking all reasonable inferences in its favor, a rational fact-
finder could find, beyond a reasonable doubt, that the prosecution
successfully proved the essential elements of the crime."  United
States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998) (citation and
internal quotation marks omitted).
    "To prove a drug conspiracy charge under 21 U.S.C.  846,
the government is obliged to show beyond a reasonable doubt that a
conspiracy existed and that a particular defendant agreed to
participate in it, intending to commit the underlying substantive
offense. . . ."  United States v. Sepulveda, 15 F.3d 1161, 1173
(1st Cir. 1993).  The prosecution may meet its burden through
either direct or circumstantial evidence, or through some
combination thereof.  See United States v. Houlihan, 92 F.3d 1271,
1292 (1st Cir. 1996).
    In this case, the appellant claims that the government's
proof fell short in two respects because the evidence failed to
show either that he agreed to participate in the conspiracy or that
he possessed an intent to commit the underlying offense.  This
claim rests mainly on the assertion that the prosecution offered no
direct proof that the appellant personally engaged in drug
transactions.  The claim is groundless:  proof of direct
participation in the sale of drugs is not required to convict in a
drug conspiracy case.  See, e.g., United States v. David, 940 F.2d
722, 735 (1st Cir. 1991).
    In all events, a percipient witness, Marcos Hidalgo
Melendez (Hidalgo), himself a coconspirator, testified that he
received money from the appellant after delivering narcotics to
him.  Furthermore, Hidalgo and another admitted coconspirator
testified in substance that Marrero served as a supervisor at the
drug ring's distribution center in Corozal.  This evidence, in
conjunction with testimony concerning (i) the appellant's frequent
presence at the ring's distribution center in Arecibo, (ii) the
appellant's wounding during a skirmish between rival drug gangs
(see infra Point 3), (iii) the inclusion of the appellant's name
and telephone number in a drug ledger and related records seized
from the ringleader's home, and (iv) the appellant's repeated
posting of bail for members of the conspiracy, was sufficient to
ground the jury's verdict.  See United States v. Ortiz, 966 F.2d
707, 712 (1st Cir. 1992) (permitting factfinders to "draw
reasonable inferences from the evidence based on shared perceptions
and understandings of the habits, practices, and inclinations of
human beings," and warning that, in assessing sufficiency
challenges, factfinders are required neither "to divorce themselves
from their common sense nor to abandon the dictates of mature
experience").
    2.  Variance.  A variance occurs when the facts adduced
at trial differ meaningfully from those adumbrated in the
indictment.  The appellant contends that the instant indictment
contained a fatal variance because it charged him with supervising
a drug point in Arecibo, while the evidence introduced at trial
linked him primarily to drug transactions in Corozal.  We reject
this contention.
    In a criminal case, not every difference between the
indictment and the proof justifies relief; only those instances in
which a disparity is material and affects a defendant's substantial
rights warrant reversal.  See United States v. Tormos-Vega, 959
F.2d 1103, 1115 (1st Cir. 1992) (explaining that a variance
justifies reversal only if it materially impairs the defendant's
right to "have sufficient knowledge of the charge against him in
order to prepare an effective defense and avoid surprise at
trial"); accord United States v. Fisher, 3 F.3d 456, 463 (1st Cir.
1993).  We think that the charging document suffices in this case.
    The indictment describes the manner and means of the
conspiracy as the retail distribution of narcotics at numerous
locations ("puntos") controlled by the so-called Santiago
organization, specifically, Arecibo and "elsewhere."  It then limns
42 overt acts, including some acts committed at Arecibo and some at
Corozal.  In paragraph 22 the indictment charges the appellant,
acting in furtherance of the conspiracy, with possession of a
firearm in Corozal.  These allegations provided an adequate preview
of the proof to come.
    The government need not recite all its evidence in the
indictment, nor is its trial proof limited to the overt acts
specified therein.  See United States v. Bradstreet, 135 F.3d 46,
53 (1st Cir. 1998); United States v. Innamorati, 996 F.2d 456, 477
(1st Cir. 1993); United States v. Bello-Perez, 977 F.2d 664, 669
(1st Cir. 1992).  In this instance, the indictment, despite its
emphasis in paragraph 10 on the appellant's control over the sale
of drugs in Arecibo, put him squarely on notice that the
prosecution viewed his dealings in Corozal as an integral part of
the conspiratorial mix.  Because the appellant cannot credibly
claim surprise, the asserted variance does not warrant setting
aside the verdict.  
    3.  The Shooting Incident.  The appellant protests a
district court ruling permitting the prosecution to introduce
evidence about his involvement in a shooting incident in Corozal.  
The nature of the evidence is described in the margin.  We
conclude that the court acted within its discretion in admitting
the evidence.
    Relevant evidence is evidence that has a "tendency to
make the existence of any fact . . . more probable or less probable
than it would be without the evidence."  Fed. R. Evid. 401.  
Evidence, though relevant, nonetheless may be excluded if its
probative value is overbalanced by other considerations, such as by
the danger of unfair prejudice.  See United States v. McKeeve, 131
F.3d 1, 13 (1st Cir. 1997) (citing Fed. R. Evid. 403).  Virtually
all evidence is meant to be prejudicial, and it is only unfairprejudice against which Rule 403 protects.  See United States v.
Pitrone, 115 F.3d 1, 8 (1st Cir. 1997); Houlihan, 92 F.3d at 1297.  
Because such determinations are peculiarly within the ken of trial
courts, we review them only for abuse of discretion.  See Pitrone,
115 F.3d at 7; Houlihan, 92 F.3d at 1297.
    Concluding that evidence of the shooting incident made it
more probable that Marrero was a member of the conspiracy, and that
the evidence's probative worth outweighed any unfairly prejudicial
effect, the district court admitted the evidence.  We decline to
second-guess this ruling.  See Freeman v. Package Mach. Co., 865
F.2d 1331, 1340 (1st Cir. 1988) ("Only rarely   and in
extraordinarily compelling circumstances   will we, from the vista
of a cold appellate record, reverse a district court's on-the-spot
judgment concerning the relative weighing of probative value and
unfair effect.").
    4.  Rule 12(d)(2).  Citing Fed. R. Crim. P. 12(d)(2), the
appellant assigns error to the district court's admission of
certain evidence during trial.  The background is as follows.  
Because of the numerosity of defendants, the district court ordered
two separate trials on the indictment.  The court placed the
appellant in the second group.  The government designated all its
evidence prior to the first trial, but did not renew the
designation prior to the second trial.
    Without citing any pertinent authority, the appellant
claims that the government had an obligation to redesignate the
evidence before using it at the second trial.  The applicable test
is for abuse of discretion, see United States v. de la Cruz-
Paulino, 61 F.3d 986, 993 n.3 (1st Cir. 1995), and we are not
persuaded that the district court perpetrated an abuse when it
ruled that the initial designation satisfied Rule 12(d)(2)'s notice
requirements.  Under the circumstances, redesignation would have
served no useful purpose.
    We add that, even if the government's failure to
redesignate the evidence technically violated the rule, the
violation did not prejudice the defense.  The appellant's main
emphasis in this aspect of his appeal relates to certain
incriminating statements allegedly made by him after the shooting
incident described in Point 3, supra.  Rule 12(d)'s function is
procedural; compliance with its terms enables a defendant to move
for suppression in a timely manner.  Here, the district court
permitted the appellant, out of time, to file a suppression motion
addressed to the incriminating statements.  See de la Cruz-Paulino,
61 F.3d at 994 n.5 (endorsing this practice).  The court then
denied the motion, holding that the government had a right to use
the statements.  Given that eminently correct ruling, the
appellant's claim of prejudice rings hollow.
    Taking an alternate tack, the appellant also suggests
that the government's failure to designate evidence relating to
both his possession of firearms and his relationship with other
participants in a drug transaction violated Rule 12(d)(2).  But the
appellant is firing blanks; he makes no developed argument for the
suppression of such evidence.  Absent some articulation of a
convincing rationale for quashal, the lack of an opportunity to
file a pretrial suppression motion cannot be viewed as prejudicial.  
See id. at 994.
    5.  Cross-Examination.  The appellant complains that the
district court transgressed his fundamental right to cross-examine
adverse witnesses when it barred him from eliciting testimony,
through cross-examination of a prosecution witness, that local
charges related to his arrest for weapons possession had been
dismissed.  Managing the scope of cross-examination is a matter
that falls within the district court's sound discretion.  SeeUnited States v. Boylan, 898 F.2d 230, 254 (1st Cir. 1990).  We are
confident that the  court did not abuse its discretion when it
prohibited the appellant from cross-examining the witness regarding
the prior proceeding.
    This court recently joined several other circuits in
holding that a district court has discretion to exclude from
evidence acquittals or other favorable outcomes of prior state
court proceedings involving the same subject matter.  See United
States v. Smith, 145 F.3d 458, 462 (1st Cir. 1998); accord United
States v. Thomas, 114 F.3d 228, 249-50 (D.C. Cir.), cert. denied,
118 S. Ct. 635 (1997); United States v. Jones, 808 F.2d 561, 566
(7th Cir. 1986); United States v. Irvin, 787 F.2d 1506, 1516-17
(11th Cir. 1986); United States v. Sutton, 732 F.2d 1483, 1493
(10th Cir. 1984); United States v. Viserto, 596 F.2d 531, 537 (2d
Cir. 1979).  The rationale is plain:  such evidence ordinarily does
not prove innocence.  After all, cases are dismissed for a variety
of reasons, many of which are unrelated to culpability.  Because
evidence of a dismissal may have served to confuse the jury rather
than to assist it, the district court had the authority to exclude
such evidence here.  See Fed. R. Evid. 403.
    Undaunted, the appellant makes a related argument.  He
says that, even if the district court ordinarily can exclude such
evidence, it should not have done so here because it permitted a
government witness to testify that Marrero had been arrested
locally.  The law is against the appellant's position:  other
courts have held routinely that a district judge does not abuse his
discretion by allowing some evidence related to a local proceeding,
yet barring evidence of the outcome of that proceeding.  See, e.g.,
Jones, 808 F.2d at 566-67; Sutton, 732 F.2d at 1493.  We need not
go so far, however, for in this instance, the appellant opened the
door by inquiring during cross-examination if the witness
personally arrested Marrero.  He cannot now be heard to complain
that the government followed his lead and elicited the challenged
testimony on redirect.
    6.  Jencks Act.  The Jencks Act, 18 U.S.C.  3500, in
concert with Fed. R. Crim. P 26.2, controls the production of
certain witness statements in the government's possession.  In this
case, the appellant sought to inspect rough notes taken by an
Internal Revenue Service agent, Felicia Ramos, during an interview
of Hidalgo (who testified at the trial as a government witness).  
The appellant maintains that the notes comprised a "statement"
under 18 U.S.C.  3500(e)(1), that the government therefore was
obliged to produce them, and that their availability would have
enabled him to impeach Hidalgo's credibility.  We do not agree.
    The Jencks Act ordains that "[a]fter a witness called by
the United States has testified on direct examination, the court
shall, on motion of the defendant, order the United States to
produce any statement . . . of the witness in the possession of the
United States which relates to the subject matter as to which the
witness has testified."  18 U.S.C.  3500(b).  The question here is
whether the notes constitute a "statement."  The statute itself
provides some enlightenment, defining a "statement" as one "made by
said witness and signed or otherwise adopted or approved by h[er]"
18 U.S.C.  3500(e)(1).  A written summary of a witness interview
is not a statement unless the evidence shows that the witness
adopted the notes, a phenomenon that would occur, for example, if
"the interviewer read the statement back to the witness and . . .
the witness approved the statement."  United States v. Gonzalez-
Sanchez, 825 F.2d 572, 586 (1st Cir. 1987).
    In this instance, the record is barren of any evidence
that Hidalgo adopted the notes in question or that they otherwise
satisfied the Jencks Act's definition of a statement.  Hence, the
government had no obligation to produce them and the denial of
discovery was proper.
    7.  Anonymous Jury.  Under 28 U.S.C.  1863(b)(7), a
district court may empanel an anonymous jury in any case in which
"the interests of justice so require."  We recently held that this
standard is satisfied when "there are strong grounds for concluding
that [anonymity] is necessary to enable the jury to perform its
factfinding function, or to ensure juror protection."  United
States v. DeLuca, 137 F.3d 24, 31 (1st Cir.), cert. denied, 67
U.S.L.W. 3084 (U.S. Oct. 5, 1998) (No. 98-141).  The trial court
must take care, however, to implement reasonable safeguards "to
minimize any risk of infringement upon the fundamental rights of
the accused."  Id.  Under these criteria, Judge Fust did not
exceed the scope of his discretion when he empaneled an anonymous
jury in this case.
    The indictment charged the appellant and his
coconspirators with membership in a sprawling drug ring that often
resorted to violence in its pursuit of profits.  The government's
evidence indicated, for example, that a co-defendant, Miranda,
ordered the murders of six people during 1993 and 1994 in
retaliation for the slaying of Santiago's bodyguard.  The appellant
himself suffered a bullet wound while in the organization's
service.  See supra Point 3.  During the arraignment that followed
the  return of this indictment, a brawl erupted.  Last   but surely
not least   the government proffered evidence indicating that the
Santiago drug ring was plotting to murder federal agents and local
police officers to improve the odds at trial.  Under these ominous
circumstances, the court reasonably could have believed that the
jurors were in harm's way.  In turn, this reasonable belief
adequately supported the empanelment of an anonymous jury.
    By like token, Judge Fust took satisfactory precautions
to protect the defendants' rights.  He did not mention any threat
to juror safety, but, rather, informed the jurors that they would
remain anonymous during the trial because of publicity concerns.  
He then instructed the jury on the presumption of innocence, and
periodically repeated that instruction as the trial progressed.  No
more was exigible.  See id. at 32.
    8.  Peremptory Challenges.  In a related vein, the
appellant argues that the empanelment of an anonymous jury created
a need for additional peremptory challenges, beyond those
ordinarily allowed.  See Fed. R. Crim. P. 24(b) (delineating
allotment and distribution of peremptories).  Although the
applicable rule allows a judge to grant additional challenges, the
judge has wide discretion in administering this authority.  SeeUnited States v. Cox, 752 F.2d 741, 747-48 (1st Cir. 1985).  The
empanelling of an anonymous jury neither curtails the scope of this
discretion nor obligates a district court to afford more
peremptories to the defense.  We therefore reject the appellant's
assignment of error.
                       Sentencing Issues
    We turn next to the appellant's myriad challenges to the
360-month sentence that the district court imposed.
    9.  Continuance of Dispostion Hearing.  Fed. R. Crim. P.
32(a) requires, inter alia, that the trial court impose sentence
without undue delay.  Such a dispositon occurs following the
preparation of the presentence investigation report (PSI Report)
and the lodging of objections thereto.  See Fed. R. Crim. P.
32(b)(6)(C) ("Not later than 7 days before the sentencing hearing,
the probation officer must submit the presentence report to the
court, together with an addendum setting forth any unresolved
objections . . . [a]t the same time, the probation officer must
furnish the revisions of the presentence report and the addendum to
the defendant.").  In this instance, the probation officer did not
distribute the addendum to the PSI Report in a timely manner.  The
appellant   who unsuccessfully sought a continuance   makes three
arguments in regard to this lapse:  (1) that the probation
officer's failure to comply strictly with Rule 32 denied him the
opportunity adequately to prepare a rebuttal to the PSI Report; (2)
that the probation officer's belated response to the appellant's
objections created unfair surprise; and (3) that, as a result of
this surprise, defense counsel was unable either to explain the PSI
Report to his client or to discuss the proceedings with him.
    Appellate review of a trial court's ruling on a
sentencing continuance is deferential.  See United States v.
Ottens, 74 F.3d 357, 359-60 (1st Cir. 1996) (adopting abuse of
discretion standard).  The focus is on what constitutes a
reasonable period of time for preparation, not on defense counsel's
"subjective satisfaction with his level of preparedness."  Id. at
359.  In sifting the entire panoply of relevant considerations, the
district court may consider factors such as prior continuances,
time available for preparation, and how efficiently defense counsel
used the available time.  See id.
    In the case at bar, the lower court postponed the
disposition hearing for two months to give defense counsel more
time to review the PSI Report.  During this two-month interlude,
defense counsel filed several objections (which prompted the  
addendum).  Defense counsel at no time sought to introduce any new
evidence, despite ample time to prepare rebuttal arguments.  
Finally, although defense counsel did not receive a copy of the
addendum until the day before the new sentencing date, that
document did  no more than respond to points that defense counsel
himself had raised.  He obviously had enough time to review it
because he argued eloquently concerning the conclusions that it
contained.  Hence, the appellant's first argument founders.
    Nor can the appellant convincingly claim undue surprise.  
Defense counsel already had been granted a generous continuance.  
He knew the information contained within the PSI Report, and he had
two months in which to prepare his rebuttal.  The addendum did not
contain any new information; it merely referenced trial testimony
to refute the appellant's objections and, concomitantly, to support
the probation officer's recommendation of a base offense level
(BOL) of 38, a two-level upward adjustment for possession of a
firearm, and a two-level enhancement for a supervisory role.  The
fact that the appellant received the addendum the day before
sentencing, although violative of Rule 32(b)(6)(C), is not
sufficient, in and of itself, to establish undue surprise.  SeeUnited States v. Williams, 499 F.2d 52, 54-55 (1st Cir. 1974)
(holding an analogous violation harmless on the ground that the PSI
Report did not contain any information that the defendant could not
have anticipated, despite the fact that the defendant received it
five minutes before the disposition hearing).  
    Finally, the appellant's claim that he did not have the
opportunity to discuss the sentencing materials with his defense
counsel is unsupported.  The sentencing transcript reflects that
the judge asked the appellant whether he had reviewed the PSI
Report with his attorney and the appellant replied "yes."  When
asked if he had any further objections to it, the appellant replied
"no."  Courts long have held that a defendant cannot make solemn
representations at sentencing and freely disclaim them at a later
date, when it is to his advantage to do so.  See  United States v.
Mata-Grullon, 887 F.2d 23, 24 (1st Cir. 1989).
    10.  Written Findings.  Fed. R. Crim. P. 32(c)(1)
requires that the trial court make a finding in respect to each
matter controverted at sentencing (or, alternatively, make a
finding that the controverted matter has no bearing).  The rule
also directs the sentencing court to append a written record of its
findings to the judgment.  See id.  The appellant complains that
the sentencing court neglected to follow this regimen.
    When the sentencing court makes specific findings oretenus, the court may append the sentencing transcript to the PSI
Report and thus effect compliance with Rule 32(c)(1).  See United
States v. Bruckman, 874 F.2d 57, 65 (1st Cir. 1989).  Preparing an
additional written record of findings is merely "ministerial," and
will not be required.  Id.; accord United States v. Mena-Robles, 4
F.3d 1026, 1037 n.14 (1st Cir. 1993).  The same is true when the
court makes implicit findings by reference to detailed suggestions
in the PSI Report.  See United States v. Ovalle-Mrquez, 36 F.3d
212, 227 (1st Cir. 1994).
    Against this backdrop, the record rebuts the appellant's
contention that the district court did too little.  It shows that,
at the disposition hearing, the judge made a specific finding as to
each controverted matter:  drug quantity, possession of a firearm,
and role in the offense.  If the transcript that embodies those
findings has not already been appended to the PSI Report, we direct
that this amalgamation be made.  No more is necessary.  
    11.  Possession of a Firearm.  In this case, the district
court increased the BOL by two levels because the appellant
possessed a firearm in connection with his drug-trafficking
activities.  See USSG 2D1.1(b)(1).  The appellant urges us to
nullify this enhancement.  He bases his argument on an analogy to
Bailey v. United States, 116 S. Ct. 501 (1995).  For purposes of a
prosecution under 18 U.S.C.  924(c)(1), Bailey requires proof that
the defendant's "use" of a firearm had an active relation to the
underlying drug offense (e.g., that the defendant displayed, fired,
or brandished the weapon).  See id. at 503.  We agree with the
sentencing judge that Bailey is not controlling here.
    The sentencing guidelines govern this sentence
enhancement.  The applicable guideline provides that "[i]f a
dangerous weapon (including a firearm) was possessed," the court
should increase the defendant's BOL by two levels.  USSG
2D1.1(b)(1).  The appellant argues that this guideline provision
should be construed in pari materia with section 924(c)(1)   but he
does not explain why this parallelism must exist.  The language of
the two provisions is dissimilar.  So, too, is their effect:  a
conviction under 18 U.S.C. 924(c)(1) results in an incremental
five-year consecutive sentence, while a sentence enhancement under
USSG 2D1.1(b)(1) results merely in a two-level adjustment to the
defendant's BOL.  Most importantly, the interpretation of the
guideline provision is colored by the Sentencing Commission's
instruction that "[t]he adjustment should be applied if the weapon
was present, unless it is clearly improbable that the weapon was
connected with the offense."  USSG 2D1.1(b)(2), comment. (n.3).  
This is a far cry from the way in which the Bailey Court instructs
judges to approach section 924(c)(1).
    We need not tarry.  Bailey is inapposite here.  And,
moreover, the evidence amply supports a finding, by a
preponderance, that the appellant possessed a firearm for potential
use in connection with his drug-trafficking activities.  See, e.g.,
United States v. Berrios, 132 F.3d 834, 839 (1st Cir. 1998); United
States v. Gonzalez-Vazquez, 34 F.3d 19, 24 (1st Cir. 1994); United
States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990).  Accordingly,
the district court did not err in enhancing the appellant's
sentence under USSG 2D1.1(b)(1).
    12.  Supervisory Role.  The district court also boosted
the appellant's BOL for his role as a supervisor in the narcotics
enterprise.  The appellant claims that the finding lacks support.  
We disagree.
    In order to qualify for a two-level enhancement as a
supervisor in a criminal enterprise, a defendant must exercise
control over at least one other culpable individual.  See United
States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991) (discussing
USSG 3B1.1(c)).  The appellant's argument here boils down to a
plaint that the district court made no specific findings in support
of its determination that he deserved the enhancement.  Although
such findings are always helpful, they are unnecessary when the
record clearly reflects the basis of the court's determination.  
See United States v. Quinones, 26 F.3d 213, 219 (1st Cir. 1994)
(indicating a willingness to overlook the absence of findings "if
the reasons for the judge's choice are obvious or if an explanation
can fairly be implied from the record as a whole").  This is such
a case.
    At trial, the government presented two witnesses who
indicated that the appellant was in charge of the conspiracy's drug
point in Corozal.  The government also presented testimony as to
how the drug points were managed and the number of individuals
involved.  This evidence is self-explanatory and provides adequate
support for the district court's determination that the appellant
ran a drug point and supervised others in so doing.  See United
States v. Cruz, 120 F.3d 1, 4 (1st Cir. 1997) (en banc).  
    13.  Drug Quantity.  In a narcotics case, drug quantity
is an important integer in calculating the BOL (and, hence, the
sentence itself).  See Sepulveda, 15 F.3d at 1197.  To determine
the drug quantity attributable to a particular defendant, a court
looks to the quantity of drugs associated with the count(s) of
conviction, plus all "relevant conduct," i.e., those acts that were
part of the same "'common scheme or plan as the offense of
conviction', whether or not charged in the indictment."  United
States v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990) (quoting USSG
1B1.3(a)(2)).  In the case of a conspiracy, however, a defendant
cannot be saddled with quantities of drugs that he could not
reasonably have foreseen.  See United States v. Garcia, 954 F.2d
12, 15 (1st Cir. 1992).
    Different types of drugs affect the offense-level
calculation in different ways.  For instance, a defendant whose
relevant conduct involved 30 kilograms or more of heroin would
merit a BOL of 38, as would a defendant whose relevant conduct
involved 150 kilograms of cocaine, or one whose relevant conduct
involved 1.5 kilograms of cocaine base (crack cocaine).  See USSG
2D1.1(c)(1) (Drug Quantity Table).  The Santiago organization
trafficked indiscriminately in heroin, powdered cocaine, and crack,
and the sentencing guidelines contain an elaborate conversion
formula that can be used in such cases.  See USSG 2D1.1, comment.
(n.10).
    At the disposition hearing, the judge set the appellant's
BOL at 38, but without much in the way of elaboration.  The
appellant challenges this assessment.  On the evidence, the judge
easily could have found, by the requisite preponderance-of-the-
evidence standard, see Sklar, 920 F.2d at 110, that the appellant
was a member of the Santiago organization, whose relevant conduct
encompassed drug transactions occurring at the Arecibo and Corozal
drop points.  But the court did not reference any evidence to
support an assessment of the volume of drugs sold at either
location, and the PSI Report contains no such quantification.  
While we may agree with the government that the Santiago
organization did a substantial amount of narcotics business, and
that the totals necessary for a BOL of 38 (e.g., 1.5 kilograms of
crack) seem attainable given the appellant's role in the
conspiracy, we cannot uphold a drug quantity calculation on the
basis of hunch or intuition.  See Sepulveda, 15 F.3d at 1199;
Sklar, 920 F.2d at 113.
    In this case, drug quantity dictated the appellant's
sentence in large part.  In the absence of particularized findings
to support the assigned BOL, we have no principled choice but to
vacate the sentence and remand for further findings and
resentencing.  See Sepulveda, 15 F.3d at 1199; United States v.
O'Campo, 973 F.2d 1015, 1026 (1st Cir. 1992).
                           Conclusion
    We need go no further.  Although the appellant has raised
a gallimaufry of arguments anent his conviction, all of them   
including some that do not warrant discussion   are unavailing.  
For aught that appears, the appellant was fairly tried and justly
convicted.  A question lingers, however, as to the appropriateness
of the appellant's sentence.  That question apparently turns on the
issue of drug quantity, since the appellant's other sentence-
related arguments all are groundless.  To enable this final
question to be answered, we vacate the appellant's sentence and
remand for resentencing.

    The appellant's conviction is affirmed, his sentence is
vacated, and the case is remanded for resentencing.

</body>

</html>